Marcus A. Helt (TX 24052187)
Paul V. Storm (TX 19325350)
C. Ashley Ellis (TX 00794824)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX  75201
Telephone:  214.999.3000
Facsimile:  214.999.4667

**PROPOSED COUNSEL FOR THE DEBTORS,
DIAMONDBACK INDUSTRIES, INC.,** *et al.*

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| DIAMONDBACK INDUSTRIES, INC., *et al.*,[1] | § | CASE NO.: 20-41504-ELM-11 |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

**MOTION APPROVING USE OF PAYCHECK-PROTECTION-PROGRAM FUNDS
IN THE ORDINARY COURSE OF BUSINESS OR, IN THE ALTERNATIVE,
AUTHORIZING DIAMONDBACK INDUSTRIES, INC. TO INCUR
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. § 364(a) OR (b)**

Diamondback Industries, Inc., ("**Diamondback**"), Discerner Holdings, Inc. ("**Discerner Holdings**"), and Discerner Investments, LLC ("**Discerner Investments**"), (collectively, "**Diamondback**" or "**Debtors**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion Approving Use of Paycheck Protection Program Funds in the Ordinary Course of Business or, in the Alternative, Authorizing Diamondback Industries, Inc. to Incur Postpetition Financing Pursuant to 11 U.S.C. § 364(a) or (b)* (the "**Motion**"). In support of the Motion, Diamondback respectfully represents

---

[1] The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number, include: Diamondback Industries, Inc. (4403) ("**Diamondback**"); Discerner Holdings, Inc. (5110) ("**Discerner Holdings**"); and Discerner Investments, LLC (3076) ("**Discerner Investments**"). The debtors' service address is 3824 Williamson Road, Crowley, Texas 76036.

1

as follows:

## I.
## EXECUTIVE SUMMARY

1. COVID-19 has harmed Diamondback – like it has many other small businesses across the United States. In response to the harm caused by COVID-19, Congress enacted The Paycheck Protection Program ("**PPP**") under which the Small Business Administration guarantees loans made by banks to small businesses so that they can keep their workers on the payroll and maintain steady, (minimally) uninterrupted business operations. The PPP loans are unsecured and will be forgiven upon satisfaction of certain conditions. Prior to the Petition Date, Diamondback sought and received approval for a PPP loan. However, Diamondback received $517,125.00 in PPP funds after the Petition Date. Since receipt, Diamondback has segregated the PPP funds in a separate debtor-in-possession account and not used them for any purpose.

2. Diamondback is moving as quickly as possible toward confirmation of its chapter 11 plan and an orderly exit from bankruptcy. The PPP funds will provide liquidity helpful to work toward plan confirmation, and will decrease the extent to which the Debtors must use cash collateral or pursue approval of the DIP Motion (defined below). While Diamondback believes that it borrowed the PPP funds before the Petition Date, it files this Motion, in an abundance of caution, seeking either approval to use the funds in the ordinary course of business or, in the alternative and to the extent the Court deems it necessary, to borrow the PPP funds as unsecured, postpetition financing pursuant to 11 U.S.C. § 364(a) or (b). The relief requested is in the best interests of the estates.

## II.
## JURISDICTION AND VENUE

3. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157. These matters concern the administration of these bankruptcy estates; accordingly, the

matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The legal predicates for the relief requested in this Motion are §§ 105(a), 363, 364, 502, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**"), and rules 4001, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### III.
### BACKGROUND

**A. The Bankruptcy Case**

5. On April 21, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code initiating the above-captioned (jointly-administered) bankruptcy cases in the Bankruptcy Court for the Northern District of Texas (the "**Court**") and creating their bankruptcy estates (the "**Estates**"). The Debtors continue to operate and to manage their businesses as "debtors-in-possession" pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Case pursuant to §§ 1102 and 1104.[2]

6. In an effort to expedite the reorganization process, on June 23, 2020, the Debtors filed their *Joint Chapter 11 Plan of Reorganization* and accompanying *Disclosure Statement to Joint Chapter 11 Plan of Reorganization*.

**B. Cash Collateral**

7. Pursuant to the Debtors' *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral; (II) Granting Adequate Protection; (III)*

---

[2] Information relating to the Debtor' business operations is set forth in the *Declaration of Cade Kennedy in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 15].

3

*Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* (the "**Cash Collateral Motion**") [Docket No. 11], the Interim Order entered on the Cash Collateral Motion on April 28, 2020 [Docket No. 71], and negotiated agreements between the Debtors and their secured lender UMB Bank, the Debtors have had consensual use of cash collateral since the Petition Date. The next hearing on the Cash Collateral Motion is set for July 13, 2020. However, the Debtors and UMB have decided to continue that hearing by agreement.[3]

## IV.
## RELIEF REQUESTED AND BASIS THEREFOR

**A.     The PPP Funds**

8.     To maintain orderly business operations through Plan confirmation, the Debtors need consistent funding to operate, pay administrative expenses, and confirm the Plan. The Debtors have segregated the PPP funds in a separate debtor-in-possession account and will remain so segregated until used for eligible purposes after approval by this Court. The Debtors believe that it is in their best interests and a proper exercise of their sound business judgment to use the PPP funds for eligible purposes through and after Plan confirmation.

9.     By this Motion, pursuant to sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004, Diamondback seeks, among other things, the following:

> (a) authorization to access and use the PPP funds, in accordance with §363(b)(1) and §541(a)(7) of the Bankruptcy Code, in the ordinary course of business and in accordance with the terms and conditions of a confirmed plan of reorganization or further order of this Court;  or

---

[3] The *Debtors' Amended Motion for Entry of Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Status; and (III) Granting Related Relief* (the "DIP Motion") [Docket No. 71] was also set for hearing on July 13, 2020, but UMB Bank and the Debtors have agreed to continue that hearing to a date in August 2020.

4843-1399-0082.4

(b) alternatively, as and to the extent the Court deems necessary and appropriate, authorization to borrow the PPP funds on an unsecured basis pursuant §364(a) or (b) and to execute and perform such other and further acts as may be required in connection therewith;

(c) that pursuant to Bankruptcy Rule 4001, in due course in August 2020, a hearing on the Motion be held before this Court to consider entry of a proposed order granting the relief requested herein.

**C.     Applicable Authority**

*(i)     Use of PPP Funds in or Outside the Ordinary Course of Business Pursuant to §363 and §541(a)(7)*

10. Section 541(a)(7) of the Bankruptcy Code provides that Diamondback's Estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." Generally, Chapter 11 debtors like Diamondback may continue to operate and to manage their businesses, uninterrupted and in the ordinary course, and manage property of the estate as "debtors-in-possession" pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Further, § 363(b)(1) also provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

11.    The last four (4) months of COVID-19's global pandemic have harmed Diamondback's business operations. As such, any discussion of whether this Court should authorize Diamondback to use the PPP funds to pay eligible expenses inside or outside the ordinary course of business is academic. Before the Petition Date, Diamondback sought a PPP loan. But it received the PPP funds after the Petition Date. As a result, Diamondback segregated the PPP funds from its operating receipts in a separate debtor-in-possession bank account and will not use the PPP funds without this Court's permission. In recognition of the extraordinary

circumstances surrounding COVID-19, Diamondback requests this Court's permission to receive and use the PPP funds to pay actual and necessary operating expenses.

*(ii)    Postpetition Financing Pursuant to § 364(a) or (b)*

12. Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit outside the ordinary course of business, and (c) obtaining credit with specialized priority or on a secured basis. If a debtor in possession cannot obtain post-petition credit on an unsecured basis under section 364(a) or (b) of the Bankruptcy Code, then the court may authorize that debtor to obtain credit or to incur debt that is entitled to superpriority administrative-expense status, secured by a senior lien on unencumbered property, a junior lien on encumbered property, or a combination of the foregoing pursuant to section 364(c).

13. Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain postpetition financing. In relevant part, that section provides the following:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14-day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2). Accordingly, the Court may grant the relief requested herein.

*(iii)    Approval of Access to the PPP Funds Under Section 364(a) and (b)*

14. Section 364 of the Bankruptcy Code provides:

> (a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

4843-1399-0082.4

> (b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

15. To assess a proposed unsecured postpetition-financing transaction and determine whether "notice and an opportunity for hearing" is required for a debtor to obtain such financing, courts have developed two tests to discern whether the transaction is in the "ordinary course of business" under 11 U.S.C. 364(a). The first is the "creditor-expectation" test (also called the "vertical-dimension test"), which asks whether the proposed transaction exposes the creditor to "economic risks of a different nature from those he accepted when he decided to extend credit." *In re Husting Land & Devel., Inc.*, 255 B.R. 772, 778 (Bankr. D. Utah 2000) (citing *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)).

16. In other words, the court looks at the proposed transaction and determines if a creditor would have any objections to the new risks apart from risks associated with the debtor's status in Chapter 11. *Id*. Under this test, if a transaction is one that the creditor would expect to be part of the day-to-day operations of the debtor, no notice or opportunity for hearing is required because the creditor should be aware that the Bankruptcy Code permits the debtor-in-possession to incur debts in the ordinary course of business. *Id*.

17. The second test is the "horizontal-dimension test." *Id*. at 779. Under this approach, the court compares the debtor-in-possession to other businesses and examines the type of businesses in which the debtor-in-possession is engaged to determine whether the proposed transaction is in the "ordinary course." *Id*.

18. Again, a global pandemic and Congress enacting midnight emergency-funding measures to protect the U.S. economy are, by definition, extraordinary. So whether Diamondback received the PPP funds received inside or outside the ordinary course of business

7

is a distinction without meaning in this context. This Court has the authority to grant the Debtors' request to use the PPP funds pursuant to either section 363(a) or (b).

19. At the hearing to approve this Motion, Diamondback will show that it complied with all governmental requirements and met all applicable preconditions to qualify for PPP assistance. As a result, Diamondback received $517,125.00 in PPP funds shortly after the Petition Date. Diamondback's entitlement to the PPP funds is not before this Court and is not in dispute. The participating bank received and processed Diamondback's PPP application, deemed it proper, and awarded Diamondback $517,125.00. The sole question for this Court is whether Diamondback has permission to use the PPP funds for eligible expenses.

**D. Application of the Business Judgment Standard: Access to the PPP Funds is Beneficial and in the Best Interests of the Estates**

20. In the reasonable exercise of Diamondback's business judgment, Diamondback asserts that the PPP Funds are an existing, viable "financing" option available to the Debtors. The purpose of requesting access to the PPP funds is (a) to show all appropriate deference to this Court's authority to manage these Chapter 11 cases, and (b) to enable the Debtors to (i) continue to operate, (ii) pay eligible expenses, and (iii) emerge from Chapter 11. Congress set the fairness and reasonableness of the PPP terms and those terms are not at issue in this Motion; Diamondback must adhere to those terms to receive loan forgiveness.

21. After appropriate prepetition investigation and analysis, Diamondback determined that it was in the best interest of the business to seek the PPP loan. Upon postpetition receipt of the PPP funds, Diamondback also determined that use of the PPP funds to pay eligible expenses is in the best interests of the Estates and their creditors. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.*, 163 B.R.

8

964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility, and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment. . .[and were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"); *In re Simasko Prods. Co.*, 47 B.R. 444, 449 (D. Conn. 1985) ("[B]usiness judgments should be left to the board room and not to this Court."). Indeed, "more exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

22. Diamondback exercised sound business judgment in seeking PPP funds, and has (postpetition) satisfied the legal prerequisites to access those funds or alternatively to incur postpetition unsecured debt as set forth herein. Access to and appropriate use of the PPP funds – which may or may not have to be repaid – will decrease the Debtors' need to use cash collateral, may obviate the need for additional DIP financing in the same amount from UMB Bank, and is in the best interests of the Debtors, their creditors, and the Estates. Accordingly, the Debtors should be granted authority to access, obtain, and use the PPP funds in accordance with the PPP program to pay eligible expenses pursuant to sections 1107, 1108, 363, 364(a) and (b), and 541(a)(7).

## V.
## CHECKLIST

23. The Debtors have prepared the *Attorney Checklist Concerning Motions and Orders Pertaining to the Use of Cash Collateral* in a format conforming to Appendix H of the Bankruptcy Local Rules (the "**Checklist**"), and that Checklist is attached as Exhibit "A."

9

## VI.
## NOTICE

24. Notice of this Motion will be given to the following: (a) the Office of the United States Trustee; (b) counsel for UMB Bank; (c) all creditors known to the Debtors who have or may assert liens against the Debtors' assets; (d) the United States Internal Revenue Service; (e) the twenty (20) largest unsecured creditors of the Debtors; and (f) all parties in interest who have filed a notice of appearance or on whom service must be effected under the Federal Rules of Bankruptcy Procedure. Given the nature of the relief requested herein, the Debtor submits that no further notice is required.

WHEREFORE, the Debtors respectfully request the entry of an order granting the relief requested herein, and granting such other and further relief as is just and proper.

Dated: July 6, 2020

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Paul V. Storm (TX 19325350)
C. Ashley Ellis (TX 00794824)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214.999.3000
Facsimile: 214.999.4667

**PROPOSED COUNSEL FOR THE DEBTORS, DIAMONDBACK INDUSTRIES, INC.,** *et al.*

## CERTIFICATE OF SERVICE

I certify that, on July 6, 2020, a true and correct copy of the foregoing motion was served via CM/ECF to all parties authorized to receive electronic notice in this case.

*/s/ Marcus A. Helt*
Marcus A. Helt

4843-1399-0082.4